☐ FILED ___ ENTERED
___ LOGGED _____ RECEIVED

2:38 pm, May 08 2025
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____R.M._____Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| IN THE MATTER OF THE SEARCH OF THE CELLULAR PHONE ASSIGNED IMEI NUMBER 356703089221922 | Case No. 1:25-mj-00900 |

### AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

I, Special Agent ("SA") Anthony Petrella of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being duly sworn, depose and state as follows:

### INTRODUCTION

1. The ATF and the Baltimore Police Department ("BPD") have been investigating Jokolby COOPER for violations of 18 U.S.C. § 922(g)(1) (possession of a firearm and ammunition by a prohibited person), 21 U.S.C § 841(a) (possession with intent to distribute controlled substances), and 18 U.S.C. § 924(c) (possession of a firearm in furtherance of a drug trafficking crime) (collectively the "**SUBJECT OFFENSES**").

2. Pursuant to Federal Rule of Criminal Procedure 41, I submit this affidavit in support of a search warrant authorizing the search, as further described in Attachment B, of a black Apple iPhone with IMEI number 356703089221922 ("**TARGET TELEPHONE**"), believed to belong to Jokolby COOPER, and further described in Attachment A, which is securely stored at the Baltimore Field Division of the ATF, located at 31 Hopkins Plaza, Suite 500, Baltimore, Maryland, for the time frame of July 1, 2024, through the date of the **TARGET TELEPHONE**'s recovery.

3. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested search warrants, I have not included every fact known to me concerning the entities, individuals, and the events described in this Affidavit. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however,

1

excluded any information known to me that would defeat a determination of probable cause. The information contained in this Affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with other law enforcement officers and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated.

**AFFIANT BACKGROUND**

4. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18, United States Code.

5. I have been a SA with the ATF since 2020 and I am currently assigned to the ATF Baltimore Field Division, Group III. I attended the Department of Homeland Security's Criminal Investigator Training Program and ATF's Special Agent Basic Training. I served as a police officer with the Supreme Court of the United States Police Department in Washington, D.C. for approximately six years prior to working for ATF.

6. I have conducted and participated in numerous investigations concerning the illegal possession and trafficking of firearms and controlled substances, and the commission of violent crimes by organized gangs. I received specialized training and personally participated in various types of investigative activities, including but not limited to: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants, and other individuals who have knowledge of firearms and controlled substance laws; (c) code words and phrases used by criminals when referencing firearms and narcotics; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; (f) electronic surveillance through

the use of pen registers and trap and trace devices; (g) the handling and maintenance of evidence; and (i) Title III investigations.

7. Throughout my training and experience, I have become familiar with the way narcotics traffickers use violence to further and protect their enterprise. I am familiar with the manners in which illegal drugs are transported, stored, and distributed; the methods of payment for such drugs; the possession and use of firearms in connection with the trafficking of such drugs; and the way narcotics traffickers store and conceal the proceeds of their illegal activities.

8. Based upon my training and experience, my conversations with other agents, and my participation in this and other drug trafficking investigations, I know the following about the way drug traffickers use of cellular telephones and other electronic devices:

    a. They often use cellular telephones and other electronic devices, to communicate with customers and/or co-conspirators via voice calls, text messages, and FaceTime calls. These communications are often stored on a drug trafficker's cellular telephones and other electronic devices;

    b. They often use multiple cellular telephones, and other electronic devices, including individual contacts used for particular customers or co-conspirators;

    c. They often use cellular telephones to maintain telephone number "contact lists" of customers and/or co-conspirators;

    d. They often carry firearms to protect themselves and their drug proceeds and to enforce drug debts;

    e. They often use the digital cameras on their cellular telephones to take pictures of themselves with their co-conspirators, holding handguns or other weapons, or handling controlled substances or proceeds. These pictures are often stored on a cellular telephone. I know that the **TARGET TELEPHONE** is equipped with a camera; and

    f. They often keep logs of drug debts owed by customers or to suppliers, often referred to as an "owe sheet" or "tally sheet." These logs can be kept on cellular telephones. Additionally, drug traffickers may attempt to launder drug proceeds by intermingling them with legitimate funds, evidence of which may be stored electronically on cellular telephones and other electronic devices.

**PROBABLE CAUSE**

9. On December 23, 2024, at approximately 7:53 p.m., BPD officers saw a red Honda Accord make a right turn without coming to a complete stop at the stop sign in southwest Baltimore. Officers attempted a traffic stop; in response, the vehicle began to speed away. BPD's Aviation Unit, ("Foxtrot"), joined in and followed the vehicle as it sped through neighborhoods.

10. The driver and sole occupant of the vehicle, later identified as Jokolby COOPER, fled from officers for almost 15 minutes. Foxtrot maintained a constant visual of the vehicle during its flight and observed various objects being thrown from the fleeing vehicle.

11. Specifically, at approximately 8:03 p.m., as the vehicle travelled through the 400 block of N. Pulaski Street, Foxtrot observed small objects thrown from the vehicle. Officers canvassed the block and recovered three rounds of .40 caliber ammunition. At approximately 8:04 p.m., as the vehicle travelled through the 600 block of Ashburton Street, Foxtrot saw two more objects thrown from the vehicle. Officers canvassed the area and recovered a .40 caliber firearm magazine and a Polymer 80 firearm frame.

12. At approximately 8:05 p.m., as the vehicle travelled though the 2800 block of Ellicott Drive, Foxtrot observed two more items thrown from the vehicle. Officers canvassed the area and recovered a Glock, .40 caliber barrel, and a Glock, model 27 slide. The pursuit ended when the Accord collided with another vehicle at the intersection of Poplar Grove and W. North Avenue.

13. Foxtrot observed COOPER exit from the vehicle, flee on foot, and discard a backpack. Officers arrested COOPER after a short chase and recovered and searched the abandoned backpack. Some items from the backpack spilled out on the ground. Officers recovered fifteen multicolored plastic bags and two plastic tubes containing suspected marijuana, and a digital scale.

The recovered items from the backpack and surrounding area are depicted below:



14. Officers searched the Accord and found the **TARGET TELEPHONE** lying on the driver's side floorboard of the vehicle. The **TARGET TELEPHONE** had an active FaceTime call with an unknown male. Officers heard the male laugh and say, "Hope y'all don't find the gun" before the officers ended the call. Officers also recovered a recoil firearm spring from the driver's side floorboard and two additional rounds of .40 caliber ammunition.

15. Officers were able to assemble a fully complete firearm using the recovered components. The BPD Firearms Lab test-fired the pistol and determined that it could expel a projectile by the action of an explosive, and therefore, qualifies as a firearm under 18 U.S.C. § 921(a)(3). Neither the firearm nor the ammunition were manufactured in Maryland and, therefore, affected interstate commerce prior to its recovery in Maryland on December 23, 2024.

16. I reviewed COOPER's criminal record. On August 24, 2018, he was convicted of a crime that has a possible punishment of more than one year imprisonment. Therefore, COOPER is prohibited from possessing firearms and ammunition pursuant to 18 U.S.C. § 922(g)(1) and should have known his status at the time he possessed the pistol on December 23, 2024.

17. All the circumstances surrounding the recovery of the pistol, the digital scale, and suspected marijuana packaged for distribution, indicate that COOPER possessed the firearm in furtherance of a drug trafficking crime. Because the **TARGET TELEPHONE** was being used during the incident described above and found inside the Honda Accord in proximity to ammunition

and a firearm part, I believe it will contain evidence of the **SUBJECT OFFENSES**.

18. ATF took possession of the **TARGET TELEPHONE** on April 4, 2025, less than a week after the federal investigation of COOPER began. Neither BPD nor ATF have been made aware of any attempts by COOPER to recover the **TARGET TELEPHONE**; further, COOPER has been incarcerated since his arrest on December 23, 2024.

### FORENSIC ANALYSIS OF ELECTRONIC COMMUNICATIONS DEVICES

19. Based on my training and experience, I know that electronic communications devices such as cellphones can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for some period on the device. This information can sometimes be recovered with forensics tools. There is probable cause to believe that things that were once stored on the **TARGET TELEPHONE** may still be stored on the devices, for various reasons, as discussed in the following paragraphs.

20. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **TARGET TELEPHONE** was used, the purpose of its use, who used it, and when.

21. There is probable cause to believe that this forensic electronic evidence might be on the **TARGET TELEPHONE** because data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online

nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the cellphone was in use.

22. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

23. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

24. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a cellphone is evidence may depend on other information stored on the cellphone and the application of knowledge about how a cellphone behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

25. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

26. During this case and in numerous others involving the **SUBJECT OFFENSES**, investigators have learned that suspects rely heavily on electronic devices to facilitate these types of offenses. It is necessary to conduct a physical inspection of the **TARGET TELEPHONE** in order to obtain electronic communications and other information that might be stored on the

**TARGET TELEPHONE** and to determine whether the **TARGET TELEPHONE** were the subject of wiretap, pen register, or other investigation detailed herein. In addition, the **TARGET TELEPHONE** may contain data and communications that were not electronically intercepted due to encryption or for other reasons.

27. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the **TARGET TELEPHONE** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

28. Again, the **TARGET TELEPHONE** remains in the custody of law enforcement the known specifics of the device requested for authorization to search are detailed in Attachment A and the information expected to be recovered from the devices are listed in Attachment B.

29. Based on my training and experience, and the direct circumstances of this case, I believe that COOPER may have used the **TARGET TELEPHONE** to communicate about the **SUBJECT OFFENSES** and other crimes related to this investigation which are on-going crimes. In my experience, drug traffickers tend to keep and store communications and other information in their accounts well after the completion of such crimes and continue to communicate through their electronic devices about their crimes after the crimes have been completed. Therefore, I believe that the **TARGET TELEPHONE** will contain evidence of COOPER possessing, buying, selling, or trading firearms and narcotics for at least six months before the recovery of the **TARGET TELEPHONE**. I believe that the **TARGET TELEPHONE** may provide additional evidence of these crimes and may still contain evidence that may be relevant to the investigation of the **SUBJECT OFFENSES**.

**AUTHORIZATION FOR SEARCH OF CELLULAR PHONE**

30.     There is probable cause to believe that evidence will be found from an analysis of the **TARGET TELEPHONE** may contain the records of the most recent calls, which may include calls with persons involved in the **SUBJECT OFFENSES**. The **TARGET TELEPHONE** may contain copies of SMS or text or other electronic communications relating to activities associated with the **SUBJECT OFFENSES**. Also, the **TARGET TELEPHONE** may contain a variety of other electronic evidence, including electronic communications through various cellular or internet-based applications, photographs, and other information.

31.     Wherefore, in consideration of the facts presented, I respectfully request that this Court issue a search warrant for the **TARGET TELEPHONE** and authorize the search of the item described in Attachment A, for the information set forth in Attachment B.

32.     In addition, there is good cause for the Court to authorize the requested searches at any time of the day or night. The **TARGET TELEPHONE** is already in law enforcement custody, and it is reasonable to allow law enforcement to execute the requested search at any hour of the day, even during the evening or night, if doing so is convenient for the investigators or examiners. Because the device is already in law enforcement custody, there will be no prejudice to any other person from this request.

**CONCLUSION**

33.     Based upon the information set forth in this affidavit, I respectfully submit probable cause exists to believe that the **TARGET TELEPHONE** will contain evidence of violations of federal law, to include possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g); possession with the intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a); and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. §

924(c).

WHEREFORE, in consideration of the facts presented, I respectfully request that this Court issue a search warrant, further described in Attachment A, for the purpose of seizing the items particularly described in Attachment B.

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

ANTHONY PETRELLA
Digitally signed by ANTHONY PETRELLA
Date: 2025.04.07 08:49:05 -04'00'

Special Agent Anthony Petrella
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on this  7th  day of April, 2025.

The Honorable Erin Aslan
United States Magistrate Judge